No. 16,884.

SECURITY BUILDING COMPANY *v.* LEWIS.

(255 P. [2d] 405)

Decided February 24, 1953. Rehearing denied March 24, 1953.

Mr. CHARLES W. SHELDON, JR., for plaintiff in error.

Messrs. CREAMER & CREAMER, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

DEFENDANT in error joined with her husband in a complaint seeking damages against plaintiff in error, the building company, for injuries sustained by plaintiff wife as a result of falling on a stairway in defendant's building on November 30, 1949. The husband sought damages for loss of consortium. On trial to a jury, November 13, 1951, one verdict was returned in plaintiff wife's favor against the building company for $5,000.00, and in another verdict, the jury found the issues joined for defendant building company against plaintiff husband. Judgment was entered on the verdicts. In this review, sought by the building company, plaintiff husband does not appear.

The remaining plaintiff was an employee for a number of years of a tenant of defendant building company. The offices where she was employed were on the seventh floor of the building and the ladies' rest room was on the sixth floor. During all the years of her employment it was her custom to use the stairway between the sixth and seventh floors in going to and from the rest room, and only occasionally used the elevator. On November 30, 1949, she was descending the stairway about ten o'clock in the morning on her way to the ladies' rest room. The stairway between the two floors consisted of seven steps to a landing and then seven steps down to the next floor. While proceeding down the last series of steps, and on the fourth step from the sixth-floor landing, she fell, and her left leg was fractured. At the time of the fall, she was holding onto the railing provided on the left-hand side of the stairway. It is shown that there is a so-called metal nosing on the edge of each step which extends the entire length of the step.

From plaintiffs' complaint, and plaintiff wife's testimony, it appears in effect that the steps were painted occasionally; that when the paint was worn from the metal strips, it left a smooth, shiny metal area of about one-half inch or less across the length of the leading edge of each step, and that the exposed metal was slip-

pery. Plaintiff wife testified that she was wearing "wedgies" with a flat surface from heel to toe on the day of the accident; that with her right foot, she slipped on this smooth tip of the metal or nosing.

She further testified that she had slipped on these stairs on other occasions and that the shiny condition of the metal surface on each step was observed by her for a considerable time prior to the time of her injury and she alleged that she knew of other persons having slipped thereon. She at no time made any complaint to defendant or its agents about this condition of the stairway prior to her injury, and we find no evidence of any other accident to anyone on the stairway in question. By testimony of construction engineers and the city building inspector, it is shown that there had been no structural change in the stairway since the erection of the building in 1926; that the stairway and steps were of standard construction made of concrete with a three-inch corrugated safety metal tread on the edge of each step, all of which were of standard dimension and in accordance with good building practices in all respects; that the landing and the steps were painted approximately once each year with gray paint as an aid in cleaning the stairway; further, that the stairway was cleaned each day in the course of the janitor service; that the paint on the metal safety treads, particularly on the edge thereof, wore off in approximately three weeks after painting; the metal safety treads were of corrugated steel and the ridges filled with lead; that these were fixed in the concrete of each step so as to be level with the balance of the tread; and that the edge of the step was covered with this rounded metal nosing. It further is shown that this safety tread was installed as a safety measure and the tread here used was a customary and acceptable pattern and in common usage and approved under the standard building practices. It further is disclosed that there is no requirement of the building code of the City and County of Denver that

such metal safety treads be painted in order to increase their safety.

At the conclusion of the evidence, defendant's motion for a directed verdict was denied and the case submitted to the jury under instructions, some of which were objected to by defendant, and the verdicts hereinbefore mentioned, were returned. Defendant filed a joint motion for a new trial and for judgment, notwithstanding the verdict. Each of these motions contained every point of alleged error now relied upon for reversal. The motions were overruled.

Fourteen points are specified as grounds for reversal, and, in substance, they are: That there is no evidence that defendant was guilty of negligence which proximately caused plaintiff's injuries and damage; that plaintiff was guilty of contributory negligence; that plaintiff assumed the risk of her accident and injury; that there is no evidence whatever to charge defendant with notice of any defect in the stairway in question; that these facts, being undisputed, the case should have been resolved as a matter of law; that there is no evidence that the premises were hazardous or negligently maintained; and no evidence to establish the proximate cause of plaintiff's fall or injury.

Counsel for defendant in error contend that the owner of a building is responsible for the maintenance and the safety thereof; that while the owner must have knowledge of a defect complained of, the knowledge may be constructive; that defendant in error was not contributorily negligent as a matter of law; that the questions of negligence and of contributory negligence, and the question of notice, were all jury questions and if there is any evidence to support the jury's verdict, it must be upheld; and finally, counsel contend that because plaintiff in error did not specify the error of the trial court in overruling the motion for new trial, that it cannot have the errors assigned now considered by this court, and that the writ of error should be dismissed because de-

fendant failed to proceed in apt time in accordance with the rules.

 As to the last contention of defendant in error to the effect that plaintiff in error is precluded·in this review on account of its failure to assign error as to the denial of the motion for new trial and judgment notwithstanding the verdict, very little discussion will be accorded this point, first because this very same question was raised by defendant in its motion to dismiss this writ of error, and upon consideration of such motion, we ruled adversely to this contention by denial of the motion, without any leave to renew; second, counsel for defendant in error freely admit that all of the points now relied upon by plaintiff in error for reversal were included in both motions before the trial court, and that the latter had full opportunity to correct its own error, if any, which is the basic reason for the well-known rule followed by this court to the effect that only questions presented in such motion will be considered on review. It is mandatory upon the party claiming error to move the court for a new trial, unless an order dispensing with same is entered. In addition, we may say that this jurisdiction has long followed the rule that a general assignment to the effect that the trial court erred in sustaining or overruling a motion for new trial is too general to be available. In the instant case, according to the requirements of justice we unhesitatingly apply that part of Rule 111 (f) R.C.P. Colo., which is as follows: " * * * no writ of error shall be dismissed and no specification of points shall be disregarded on account of any technical defect not affecting the substantial rights of the parties."

 It not only is admitted, but the record amply supports the statement, that the facts in this case are not disputed. Defendant building company's duty towards its tenants and their invitees was only that of ordinary care. This duty runs to the safe condition of the premises and to the duty of discovery of any defects. The

company was not an insurer against all hazards that might arise from the use of the steps.

All of the evidence, which, as above stated, is undisputed, shows that the stairway in question was properly constructed with safety treads of standard design and in common usage; that the steps or the treads were not in disrepair; that the conditions as existing at the time of the accident met all of the requirements of good building practice and were approved by the structural engineers and the city building inspector, as well as competent architects. The stairway had been in use for a long time and there is no evidence of any other accident occurring thereon; and in fact there is no complaint about the stairway, except that the leading edge or "nose" of the steps was smooth, basic metal, and plaintiff, well aware of the condition of which she complained for a long period of time, made no complaint of the condition to the building management; and in substance, her basic complaint seems to be that paint had worn off this rounded metal edge and its smoothness was the cause of her fall. There is an inescapable inference that if plaintiff had been properly descending the stairway by placing her foot on the main portion of the step instead of the metal edge, she would not have fallen unless it was that she made a misstep. The undisputed testimony in the case is to the effect that there is no requirement that the metal safety tread be painted, and further, that it was generally good practice not to paint this metal edge of the treads. We find no evidence of improper lighting, foreign substances, or disrepair of the safety tread, or any defect in the stairway; therefore, we have a situation where there was admittedly no actual notice of the defect complained of and nothing to show that anything existed that would even suggest an investigation on the part of the building management. This absence of any actual notice and nothing to support a reason for constructive notice, coupled with the undisputed facts in the case, that the stairway was of

standard construction and its reasonable maintenance disclosed ordinary care, and where there is nothing positive as to the proximate cause of the injury, we have a physical situation that removed the question here beyond reasonable controversy. There was no disputed question of fact to be determined by the jury, therefore the trial court should have sustained the motion for a directed verdict.

In accordance with the views herein expressed, the judgment is reversed and the cause remanded with directions to set aside the judgment and dismiss the complaint.